# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEON PLATT,                                )
                                           )
    Petitioner,        ) Civil Action No. 2:20-cv-1799
                                           )
  v.                              )
                                           ) Magistrate Judge Patricia L. Dodge
ATTORNEY GENERAL OF                        )
PENNSYLVANIA, et al.,                      )
                                           )
    Respondents.       )

## MEMORANDUM

Pending before the Court[1] is the Amended Petition for a Writ of Habeas Corpus (ECF No. 48) filed by Leon Platt ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment of sentence imposed on him by the Court of Common Pleas of Lawrence County at criminal docket numbers CP-37-CR-0001417-2013, CP-37-CR-0001432-2013, and CP-37-CR-0001434-2013. For the reasons below, the Court will deny the petition and will deny a certificate of appealability.

## I. Introduction

Petitioner raises four grounds for relief in his Amended Petition:[2] (1) a violation of his due process rights stemming from an undisclosed deal between the prosecution and a trial witness; (2)

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Petitioner lists two additional grounds for relief in his Reply. (ECF No. 71 at 8-11.) A habeas petitioner cannot raise new claims in a reply (formerly known as a traverse) or in other filings made after the respondent has filed the answer. Therefore, the only claims properly before the Court are those Petitioner raised in the Amended Petition. *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("The petition must: (1) specify *all* the grounds for relief available to the petitioner …. [.]") (emphasis added); Local Rule 2254.B.2.b ("The petitioner is to state *all* grounds for relief …. (emphasis in original)); Paragraph 12 of standard form ("For this petition, state *every* ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.") (emphasis added). *See also Footnote continued on next page…*

ineffective assistance of trial counsel for failure to: (a) obtain an expert witness concerning bullet trajectory; (b) "consult Taylor Foley public defender about deal"; (c) interview Foley after she recanted her testimony; and (d) file a post-sentence motion challenging the weight of the evidence; (3) denial of his right to confront witnesses against him; and (4) violation of the Grand Jury Clause of the Fifth Amendment.

## II.  Relevant Background

Petitioner was convicted at a jury trial of murder of the third degree, recklessly endangering another person (two counts), persons not to possess or use firearms, firearms not to be carried without a license, discharge of a firearm into an occupied structure, and criminal mischief.

The Superior Court of Pennsylvania summarized the underlying facts as follows:

On November 11, 2013, [Petitioner] and Taylor Foley ("Foley") went to the home of Michael Pounds, with whom Foley and [Petitioner] had an ongoing dispute. Foley drove the two to Mr. Pounds' home in a white Chevrolet Cruz owned by Foley's mother. [Petitioner] fired shots toward and into the side of the house. The bullets did not pass through to the interior of the home, but at least some bullets stuck in the house. Police found four .45 caliber shell casings around Pounds' home.

On the evening of November 15, 2013, [Petitioner], Foley, Foley's infant child, LaXavier Crumb ("Crumb"), Heather Hall ("Hall"), and Shane Mihalko ("Mihalko") were at Hall and Crumb's apartment at 411 Loop Street. That night, [Petitioner], Foley, Crumb, and Richard Hogue (the "Victim") left 411 Loop Street and drove to the West End Café.

The group drove to a road behind the West End Café, and [Petitioner] and Foley exited the vehicle. Foley shot her 9 mm pistol and [Petitioner] shot his .45 caliber Kimber pistol near the West End Café, hitting the car of Linda Boots and going through the window of Tim and Allison Phillippi's residence at 1217 Lawrence Ave.[fn 4] Crumb and the Victim stayed in the car.[fn 5]

Following the shooting, [Petitioner], Crumb, Foley, and the Victim returned to 411 Loop Street. Foley and the Victim left to get cigarettes and, while they were out, checked to see the damage [Petitioner] and Foley had caused by the shooting at the West End Café.

---

*Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.")

Upon their return to 411 Loop Street, an argument between the Victim and [Petitioner] about the scope of the damage caused by [Petitioner] and Foley ensued.

[Petitioner] was on one side of the room in a rocking chair, Foley and her baby were on a loveseat adjacent to the chair. The Victim was in the middle of a couch across the room from [Petitioner] with Crumb to his left and Mihalko to his right, and a coffee table in the middle of the seating arrangement. As the argument got more intense, Mihalko, sensing trouble, left the house. The argument continued and both the Victim and [Petitioner] stood up across the living room from each other. Foley then covered her baby in a protective position, [Petitioner] raised his .45 caliber Kimber pistol and shot the Victim once. The Victim later died.

After [Petitioner] shot the Victim, [Petitioner], Crumb, and Hall all left 411 Loop Street. Foley stayed at the house with the Victim and called 911. When the police arrived, they spoke with Foley who eventually told them that [Petitioner] was the shooter and gave them a description of him. [Petitioner], who was allegedly at Foley's parents' residence, called Foley.[fn 6]

After being called to El[l]wood City to investigate the shooting, Sgt. Matthew Smock, of nearby Koppel Borough, observed [Petitioner] heading away from El[l]wood City. Upon the arrest, [Petitioner] identified himself as "Mike." The Koppel Borough officers exchanged custody of [Petitioner] with the Pennsylvania State Police, who transported him to the El[l]wood City Police Department.

* * *

[footnote 4] Both Tim and Allison Phillippi were present in the living room when the bullets went through the living room window.

[footnote 5] After investigating the scene, police found five empty .45 caliber casings and two empty 9 mm casings near Linda Boots' Jeep, and a bullet hole in its passenger side door. Police also found two bullet holes in the window of the Phillippi residence and one bullet fragment, which police determined to have come from Lawrence Avenue.

[footnote 6] Police conducted a protective sweep of the Foley residence, but did not find [Petitioner].

(ECF No. 23-21 at 2-4.)

On August 3, 2016, Petitioner was sentenced to an aggregate term of 22 to 52 years' imprisonment.

The Superior Court of Pennsylvania affirmed his judgment of sentence on April 13, 2017. *Commonwealth v. Platt*, 169 A.3d 1169 (Pa. Super. 2017) (unpublished memorandum); (ECF No. 23-21.) Petitioner filed a petition for allowance of appeal in the Supreme Court of Pennsylvania which was denied on December 19, 2017. *Commonwealth v. Platt*, 176 A.3d 847 (Pa. 2017). Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States.

On April 9, 2018, through his trial counsel, Petitioner filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. (ECF No. 60-46). Subsequently, counsel amended the petition. (ECF No. 61-3.)There, he raised: (1) trial counsel's failure to challenge the weight of the evidence; and (2) the prosecution's failure to disclose incentives on the part of Taylor Foley to testify against Petitioner. (*Id.*) New counsel was appointed, who also raised trial counsel's ineffectiveness for failing to obtain expert ballistics testimony. (ECF No. 61-30.) An evidentiary hearing was held at which Petitioner's trial counsel testified. (ECF No. 61-41.)Taylor Foley was also called to testify, but she invoked her Fifth Amendment privilege not to do so. (*Id.*) However, audio recordings of prison calls between Petitioner and Foley were played at the hearing. (ECF No. 61-53.)

Following the evidentiary hearing, the trial/PCRA court denied the PCRA petition. Petitioner filed an appeal from the denial. The Superior Court of Pennsylvania affirmed the denial of the PCRA petition on February 28, 2020. *Commonwealth v. Platt*, 227 A.3d 452 (Pa. Super. 2020) (unpublished memorandum). (ECF No. 62-2.) Petitioner filed a petition for allowance of appeal, but the Supreme Court of Pennsylvania denied it on August 12, 2020. *Commonwealth v. Platt*, 237 A.3d 974 (Pa. 2020).

Petitioner began this action by lodging a habeas petition on November 16, 2020. (ECF No. 1-2.) This case was later stayed while Petitioner litigated another PCRA petition in state court.

(ECF Nos. 36-37.) In that PCRA proceeding, Petitioner raised Ground One (due process), which, as explained below, the PCRA court determined to be time-barred under the PCRA's one-year statute of limitations. After the Superior Court affirmed the PCRA court's decision, this case was reopened. Petitioner then filed the instant amended petition for a writ of habeas corpus. (ECF No. 48.)

Respondents filed an Answer (ECF No. 55), and Petitioner filed a Reply. (ECF No. 71.) The petition is ripe for consideration.

**III.    Discussion**

A.    Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

B.    Standard of Review

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard

against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

A finding of fact made by a state court has always been afforded considerable deference in a federal habeas proceeding. AEDPA continues that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). In this Court, it applies "to any claim that was adjudicated on the merits" by the Superior Court of Pennsylvania and prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Subsection § 2254(d)(1) applies to questions of law and mixed questions of law and fact. A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state

court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must prove that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer* [*v. Andrade*, 538 U.S. 63 (2003)]*, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

7

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[3] "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

C.    Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in

---

[3] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that when it applies, § 2254(d)(2) provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case like this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. In short, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan*, 526 U.S. at 851-56 (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner may avoid the default of a claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"*Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).

A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* at 324. In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice."

    D.    <u>Petitioner's Claims</u>

        1.    Ground One: Due Process

A very generous reading of the Amended Petition, the Reply, and other documents of record reveals that in his first ground for relief, Petitioner asserts that prosecutors failed to disclose a "deal" given to a trial witness in exchange for testimony against Petitioner. (ECF No. 48 at 5; ECF No. 71 at 3.) Although Petitioner does not set forth any relevant facts, including the name of the witness or the substance of the deal and/or testimony, presumably, he refers to Taylor Foley, as shown by the state court documents attached to the Amended Petition. He cited this "deal" as

the basis for the PCRA petition he filed while this case was stayed. As explained by the Superior

Court,

> On January 21, 2022, [Petitioner] filed … the *pro se* PCRA petition at issue in the instant appeals. Therein, [Petitioner] claimed that he "was in the law library and wanted to know the outcome of Taylor Foley's federal lawsuit decision" and discovered from Judge Patricia Dodge's memorandum opinion disposing of the case in federal court that Foley "got a deal to testify" in [Petitioner's] case.[fn1]
>
> * * *
>
> [footnote 1]: In 2018, Foley sued Lawrence County, Lawrence County's Children and Youth Services, and the Lawrence County District Attorney alleging, *inter alia*, that the defendants kept Foley's child from her without due process until Foley testified in [Petitioner's] trial. In the course of granting the defendants' motions for summary judgment on the federal claims, the court observed that "because of [Foley's] cooperation by testifying at [Petitioner's] trial, some of her pending charges were resolved[.]" *See Taylor F. v. Lawrence Cty.*, CV 18-1397, 2020 WL 7695407 at *15 (W.D. Pa. Dec. 28, 2020).

(ECF No. 48-1 at 11.)

Respondents assert that this claim is procedurally barred. (ECF No. 55 at 2-3.) Indeed, the

state courts found Petitioner's PCRA claim related to Foley's testimony to be untimely, finding

that he failed to allege sufficient facts to establish the applicability of the newly discovered facts

exception to the PCRA's time-bar where he merely alleged a new source for previously known

facts. (*Id.* at 5-18.) Accordingly, this claim is procedurally defaulted and cannot be reviewed in a

federal habeas proceeding. *See Coniker v. Scherer*, 2021 WL 356628, at *7 (W.D. Pa. 2021)

(finding procedural default of claims raised in untimely PCRA petition). Petitioner makes no effort

to overcome this default. He is not entitled to habeas relief on this ground.

2.      Ground Two: Ineffective Assistance of Counsel

Petitioner next asserts that he was denied effective assistance of trial counsel for counsel's

failure to: (1) obtain an expert witness concerning bullet trajectory; (2) "consult Taylor Foley

public defender about deal"; (3) interview Foley after she recanted her testimony; and (4) file a post-sentence motion challenging the weight of the evidence. (ECF No. 48 at 7.)

To prevail on a claim of ineffective assistance, a petitioner has the burden of establishing that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *Strickland* also requires that the petitioner demonstrate that he was prejudiced by his trial counsel's alleged deficient performance. This places the burden on the petitioner to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." *Strickland*, 466 U.S. at 694.

Pennsylvania courts typically articulate *Strickland*'s standard in three parts, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See*, *e.g.*, *Commonwealth v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland*'s] performance component into sub-parts dealing with arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in Strickland[.]").

(a) Ballistics expert

Petitioner first asserts that his trial counsel was ineffective for failing to obtain a ballistics expert to testify about bullet trajectory. (ECF No. 48 at 7.) He raised this issue in his first PCRA petition. The Superior Court addressed it as follows:

As to his ineffective assistance of trial counsel claim for failure to present expert ballistics testimony, Platt argues that counsel should have sought out and presented expert witness testimony to establish that the bullet that struck the Victim could not have originated from where he was positioned in the room. (*See* Platt's Brief at 14, 17, 20). He maintains that this was especially important where, at the time of the incident, there were as many as six people in the room. (*See id.* at 15).

"The law presumes counsel has rendered effective assistance." *Commonwealth v. Postie*, 200 A.3d 1015, 1022 (Pa. Super. 2018) (en banc) (citation omitted). "In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* (citation omitted). "The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.* (citation omitted). "The petitioner bears the burden of proving all three prongs of the test." *Id.* (citation omitted).

"To establish ineffectiveness for failing to call an expert witness, an appellant must establish that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Commonwealth v. Weiss*, 81 A.3d 767, 804 (Pa. 2013) (citations omitted).

As the PCRA court found, Platt did not substantiate his assertion that trial counsel should have obtained an expert witness to opine with respect to ballistics. (<u>*See*</u> Trial Ct. Op., at 15) (stating "[Platt] has not demonstrated a witness exists or is available to testify . . . It is not sufficient for [Platt] to claim an expert witness would have been beneficial at trial without setting forth the identity and prospective testimony of said expert witness."). Accordingly, Platt's claim fails when he has neglected to even identify the proposed witness or demonstrate availability, let alone establish prejudice.

(ECF No. 62-2 at 7-8.)

Because the Superior Court addressed this claim on its merits, Petitioner cannot obtain habeas relief unless he shows that the court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding. *See* 28 U.S.C. § 2254(d). He has made no attempt to do so. Accordingly, he is not entitled to relief on this claim.

(b) Taylor Foley deal

Petitioner also asserts that his trial counsel was ineffective for "not consulting Taylor Foley public defender about deal." (ECF No. 48 at 7.) While the basis for this claim is unclear, Petitioner did not exhaust this claim in state court. The claim is thus procedurally defaulted, and Petitioner makes no attempt to overcome the default.

(c) Interview of Foley

Petitioner next asserts that his trial counsel was ineffective for "not getting private investigator to interview [T]aylor after she called his office to recant and he never contacted [T]aylor back after she left voicemail of urgency." (ECF No. 48 at 7.) Petitioner failed to exhaust this in state court, and it is procedurally defaulted. Petitioner makes no effort to overcome the default. The Court also notes that the Superior Court made the following findings concerning another claim of Foley's "recantation" of testimony.

> Platt first claims that the PCRA court erred in not giving him a new trial based on Foley's recantation of her trial testimony during two recorded prison telephone calls with him because Foley's new statement would have changed the outcome of the trial. A petitioner seeking relief on an after-discovered evidence claim "must establish the evidence: (1) was discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) is not cumulative; (3) is not being used solely to impeach credibility; and (4) would likely compel a different verdict." *Commonwealth v. Solano*, 129 A.3d 1156, 1180 (Pa. 2015) (citation omitted). Failure to establish one prong obviates the need to analyze the remaining ones. *See id.* We are also mindful of this Court's obligation to defer to the PCRA court's credibility determinations and of the precept that, in general, recantation evidence is notoriously unreliable. *See id.*

> As the Commonwealth points out, Foley did not recant her trial testimony. (*See* Commonwealth's Brief, at 10). In fact, at the PCRA hearing, Foley refused to testify, instead asserting her Fifth Amendment right against self-incrimination. Platt did submit two conversations between himself and Foley on a recorded prison telephone line. In the recordings, Foley "admitted she frequently lies to police and

14

does not know why anyone would believe her." She also stated, "I'm sorry but I had no choice, they held my son over my head." (Platt's Brief, at 6). Furthermore, "at no point during the conversations did Foley explicitly state what portions of her trial testimony were false nor did she clearly indicate [Platt] was innocent." (Trial Court Opinion, 8/02/19, at 19).

We agree with the PCRA court that Platt did not meet the requirements of the PCRA's after-discovered evidence test. First, at trial, although she gave testimony damaging to Platt, Foley also declared his innocence and implicated another man, LaXavier Crumb, in the shooting. Second, Foley did not recant her trial testimony, either at the PCRA hearing, where she refused to testify, or in the prison phone recordings, where all she did was give reasons why she testified and that she frequently lies to the police.

Based on the above, Platt did not satisfy the after-discovered evidence test. First, he failed to satisfy the third prong of that test because he is impermissibly attempting to use the prison phone calls solely to impeach Foley's credibility with regard to her trial testimony. Second, he also failed to meet the fourth prong because those portions of the phone calls would not compel a different verdict at trial because Foley, during trial, testified that Platt was innocent; she also never recanted that portion of her testimony that was detrimental to him. Accordingly, Platt's after-discovered evidence claim merits no relief.

(ECF No. 62-2 at 5-7) (footnote 5 omitted).

The state court's finding that Foley's "recantation" would not compel a different verdict because she testified at trial that Platt was innocent casts serious doubt on the merits of a related ineffectiveness claim even if such a claim had not been defaulted. Petitioner is not entitled to habeas relief on this claim.

(d) Weight of the evidence

Finally, Petitioner asserts that his trial counsel was ineffective for failing to file a post-sentence motion challenging the weight of the evidence. (ECF No. 48 at 7.) Petitioner raised this claim in his first PCRA petition but did not raise it in his PCRA appeal. (ECF No. 23-26 at 7.) Accordingly, this claim is unexhausted and procedurally defaulted. Petitioner makes no effort to overcome the default.

The Court notes that the PCRA court found this claim to lack merit. The state court found as follows:

> A motion for new trial on the ground that the verdict was contrary to the weight of the evidence concedes that the Commonwealth presented sufficient evidence to sustain the verdict. [*Commonwealth v.*] *Widmer*, [744 A.2d 745 (Pa. 2000)] *supra.* (citing *Commonwealth v. Whiteman*, 336 Pa. Super. 120, 485 A.2d 459 (1984)). The difference between a determination of the weight of the evidence and the sufficiency of the evidence is that the court is not confined to viewing the record in the light most favorable to the Commonwealth in a weight of the evidence determination and the court may assess the credibility of the prosecution's case. *Commonwealth v. Vogel*, 501 Pa. 314, 323, 461 A.2d 604, 609 (1983) (citations omitted).

> Third-degree murder, in order to sufficiently be proved, must demonstrate there was a killing, committed by defendant, with malice. *Comm. v. Reilly*, 519 Pa. 550, 549 A.2d 503 (1988). Typically, this is broken down elementally by showing the Victim is dead, the Defendant killed him, and the killing was done with malice.

> "In determining whether malice has been established. [the Supreme] Court has utilized the traditional definition of that mental state set forth in *Comm. v. Drum*, 58 Pa. 9 (1868). That seminal definition makes clear that malice aforethought requires a unique state or frame of mind characterized by wickedness, hardness, cruelty, recklessness, and disregard of social duty: "Malice is a legal term, implying much more than spite, or a grudge. It comprehends not only a particular but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed." *Id.* 58 Pa. at 15. Malice has been characterized as exhibiting an "extreme indifference to human life," *Comm. v. Gardner*, 490 Pa. 421, 416 A.2d 1007, 1008 (1980), and "may be found to exist not only in an intentional killing, but also in an unintentional homicide where the perpetrator 'consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'" *Comm. v. Young*, 494 Pa. 224, 431 A.2d 230, 232 (1981) (quoting *Comm. v. Hare*, 486 Pa. 123, 404 A.2d 388, 391 (1979)). The Supreme Court has stated that an inference of malice is not supported even by evidence which demonstrates that a defendant acted out of anger and rage; in such a case, voluntary manslaughter, riot murder, is established. *Comm. v. McGuire*, 487 Pa. 208, 214, 409 A.2d 313, 317 (1979). ["]Thus, the mental state of malice aforethought is significantly more than mere carelessness or neglect, or the disregard of a chance or possibility of death, and it is this special frame of mind that is required to obtain a conviction under [18 Pa.C.S. § 2506]." *Comm. v. Ludwig*, 583 Pa. 6, 21-22, 874 A.2d 623, 631-32 (2005).

The Supreme Court has stated malice can be properly implied when a deadly weapon is directed to a vital part of the victim's body. *Commonwealth v. Palmer*, 448 Pa. 282, 288, 292 A.2d 921, 923 (1972) (stating in a case where the killing was accomplished by shooting the victim in the back of the head that "Malice is properly implied when a deadly weapon is directed to a vital part of the body."). Indeed, "the inference from the use of a deadly weapon upon a vital part of the body alone is sufficient to establish malice." *Commonwealth v. Torres*, 396 Pa. Super. 499, 503, 578 A.2d 1323, 1325 (1990) (emphasis added).

The Victim's death has been well-established by the testimony throughout the case setting forth the events underlying the case as well as the specific testimony of the Forensic Pathologist Todd Luckasevic, D.O. Dr. Luckasevic further testified the cause of death was a gunshot wound to the abdomen.

The second question to be answered is whether the evidence is sufficient to prove the Defendant killed the Victim. There are several eyewitnesses which clearly set forth the events leading up to and including this killing. Two eyewitnesses were in the room when the shooting occurred and two eyewitnesses exited the room before the shooting, but together each witness presents a picture which is as consistent as can be expected from any recollection.

While it is acknowledged he was intoxicated at the time of the shooting. Mihalko testified the Victim and Defendant were arguing before he left when the argument got more intense. Mihalko testified he heard the Victim offer Defendant shooting lessons. Mihalko did not want to be present for a fight as he was underage and drinking alcohol. Hall was present in the apartment at the time of the shooting but left the room prior to the shot being fired. Hall explained there was an argument arising from the Victim's insults concerning Defendant's ability to shoot a firearm accurately. Hall testified that upon entering the room after the shot, she saw the Victim on the floor and Defendant standing across the room facing the Victim.

Crumb and Foley were in the room at the time of the shot. Their testimonies are both consistent with each other's testimony and also consistent with the testimony of Hall and Mihalko.

Crumb testified that earlier in the evening, Foley, Defendant, the Victim, and he had driven to the West End Café in Ellwood City. Crumb and the Victim remained in the car to continue drinking while Foley and Defendant exited the vehicle. Crumb, hearing gunshots at the Café, jumped into the driver's seat and drove away once Foley and Defendant had returned to the car.

Crumb testified that upon returning to 411 Loop Street, Foley and the Victim left to check the damage to the Pounds residence and Ms. Boots' vehicle and, upon returning, they said there was no damage. The Victim began joking that Defendant could not shoot and an argument started based on the perceived insult. The Victim continued to agitate Defendant and as the argument escalated, Defendant retrieved

a firearm from either his pocket or from the table. Defendant loaded a single bullet into the gun from his pocket. Crumb testified Defendant pointed the gun at the Victim who appeared somewhat scared but continued with his insults. Crumb testified Defendant shot the Victim.

Foley's testimony was consistent with that of Crumb. She explained, earlier in the night, before the fatal shot, Foley and Defendant were at the West End Café with Crumb and the Victim when Foley and Defendant shot Linda Boots' vehicle. They subsequently returned to 411 Loop Street. Foley and the Victim then left the apartment and returned to the scene of the shooting to assess the damage.

Upon their return to 411 Loop Street, the Victim and Foley stated their shots missed and they did not do much damage. Defendant expressed doubt at the idea that they did not hit anything, and the Victim chided Defendant for his inability to shoot accurately. An argument started where the Victim offered to teach Defendant how to shoot. Defendant and the Victim stood up on opposite sides of the room. Defendant retrieved a gun and loaded a single bullet into the magazine then the chamber. Defendant raised the gun towards the Victim and slowly lowered it. Foley said at this point she turned to cover her baby and she heard a shot. The Victim fell to the floor.

The final element of a third degree murder charge is the finding of malice. As stated earlier, malice may be implied solely from the finding that a deadly weapon was used on a vital part of the body. Dr. Luckasevic testified the area where the Victim was shot was a vital part of the body.

Based upon the aforementioned grounds, Defendant was not prejudiced by trial counsel's failure to raise a challenge to the weight of the evidence before the trial court as that issue would not have altered the outcome of his case nor would it have presented him with a valid basis for relief on direct appeal. Therefore, trial counsel was not ineffective for failing to raise that argument for consideration by the trial court and on direct appeal.

(ECF No. 23-23 at 12-17) (footnotes omitted).

The state court's analysis determined that this claim would have failed on its merits if it had not been defaulted.

For all of these reasons, Petitioner is not entitled to habeas relief on Ground Two.

3.      Ground Three: Confrontation of Witnesses

Petitioner next asserts that he was denied his right to confront witnesses against him. (ECF No. 48 at 8-9.) This claim is based on Taylor Foley and her "undisclosed deal." (*Id.*) As discussed

18

above in Ground One, Petitioner has procedurally defaulted claims related to Ms. Foley and her "undisclosed deal." He cannot receive habeas relief on this ground.

### 4.    Ground Four: Indictment

Finally, Petitioner asserts a violation of the Grand Jury Clause of the Fifth Amendment,[4] claiming that he was never charged for the instant crimes "until [his] jury verdict." (ECF No. 48 at 10.) This claim appears to be procedurally defaulted, but it is easily dismissed on its merits because, unlike many other provisions of the federal Bill of Rights, the Grand Jury Clause does not apply to state prosecutions. *See Hurtado v. California*, 110 U.S. 516, 535 (1884); *Romansky v. Sci*, 933 F.3d 293, 297 (3d Cir. 2019). Accordingly, this claim fails on its merits.

## IV.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[4] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger …."

Applying that standard here, jurists of reason would not find debatable whether Petitioner's claims should be denied. Therefore,  the Court also will deny a certificate of appealability as to each claim.

**V.    Conclusion**

For these reasons, the Court will deny the petition and will deny a certificate of appealability as to each claim.

An appropriate Order follows.


Dated: August 5, 2025                    /s/ Patricia L. Dodge
                                         PATRICIA L. DODGE
                                         UNITED STATES MAGISTRATE JUDGE